JOURNAL ENTRY AND OPINION
{¶ 1} Plaintiff-appellant, Patricia B. Fitzmaurice, appeals the judgment of the Cuyahoga County Common Pleas Court granting the motion for summary judgment of defendant-appellee, Great Lakes Computer Corporation. For the reasons that follow, we reverse and remand
 {¶ 2} In the Summer of 2001, Fitzmaurice and her husband, Timothy J. Fitzmaurice, filed suit against Great Lakes Computer Corporation (Great Lakes), Fitzmaurice's former employer, asserting claims for handicap discrimination, breach of employment contract and loss of consortium. The trial court, without opinion, subsequently granted Great Lakes' motion for summary judgment. Fitzmaurice timely appealed, asserting one assignment of error.
 {¶ 3} In her assignment of error, Fitzmaurice contends that the trial court erred in granting summary judgment to Great Lakes "where there was a genuine issue of fact as to whether or not the appellant's disability or the appellee's perception of the appellant as having a disability was a factor in appellee's decision to transfer, demote and terminate appellant Patricia Fitzmaurice."
 {¶ 4} At the outset, we note that Fitzmaurice does not argue that the trial court erred in dismissing her claims for breach of employment contract or loss of consortium. Accordingly, we need not address those claims.
 SUMMARY JUDGMENT STANDARD {¶ 5} This court reviews the lower court's grant of summary judgment de novo in accordance with the standards set forth in Rule 56(C) of the Ohio Rules of Civil Procedure. N. Coast Cablev. Hanneman (1994), 98 Ohio App.3d 434, 440. To obtain a summary judgment under Civ.R. 56(C), the moving party must demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The moving party bears the initial burden of informing the court of the basis of the motion and identifying those portions of the record which support the requested judgment. Vahila v. Hall
(1997), 77 Ohio St.3d 421, 430. If the moving party discharges its initial burden, the party against whom the motion is made then bears a reciprocal burden of specificity to oppose the motion. Id. See, also, Mitseff v. Wheeler (1998),38 Ohio St.3d 112. Summary judgment is appropriate if, after construing the evidence most favorably for the party against whom the motion is made, reasonable minds can reach only a conclusion that is adverse to that party. Zivich v. Mentor Soccer Club (1998),82 Ohio St.3d 367, 369-370; Temple v. Wean United, Inc. (1977),50 Ohio St.2d 317, 327. Any doubts must be resolved in favor of the non-moving party. Murphy v. Reynoldsburg (1992),65 Ohio St.3d 356, 358-359.
 HANDICAP DISCRIMINATION CLAIM {¶ 6} Fitzmaurice alleged discrimination under Ohio's anti-discrimination statute, Ohio Revised Code Chapter 4112. To establish a prima facie claim of handicap discrimination under R.C. 4112.02, the person seeking relief must establish that he or she (1) was handicapped; (2) suffered adverse employment action, at least in part, because of the handicap; and (3) could safely and substantially perform the essential functions of the job in question. Miller v. Premier Indus. Corp. (2000),136 Ohio App.3d 662.
 {¶ 7} A handicap, or disability, as defined by R.C.4112.01(A)(13), is "a physical or mental impairment that substantially limits one or more major life activities, including the functions of caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working; a record of a physical or mental impairment; or being regarded as having a physcial or mental impairment."
 {¶ 8} Ohio's statute was modeled after the federal Americans with Disabilities Act ("ADA") and therefore, we look to the ADA and its interpretation by federal courts for guidance in interpreting the Ohio statute. Columbus Civ. Serv. Comm. v.McGlone (1998), 82 Ohio St.3d 569 ("We can look to regulations and cases interpreting the federal [ADA] for guidance in our interpretation of Ohio law.")
 {¶ 9} Fitzmaurice first argues that she falls under the protection of the statute because she has a statutorily defined disability, i.e., multiple sclerosis, and this disability was a factor in Great Lakes' decision to transfer her, demote her and ultimately terminate her employment. Fitzmaurice contends that R.C. 4112.01(A)(16)(a)(iii) lists "physical or mental impairments" as including any of the following:
 {¶ 10} "Diseases and conditions, including, but not limited to, orthopedic, visual, speech, and hearing impairments, cerebral palsy, autism, epilepsy, muscular dystrophy,multiple sclerosis,
cancer, heart disease, diabetes, human immunodeficiency virus infection, mental retardation, emotional illness, drug addiction, and alcoholism." (Emphasis added.)
 {¶ 11} Therefore, according to Fitzmaurice, because multiple sclerosis is listed as a physical impairment, she is disabled and therefore qualifies for protection under the statute. We disagree.
 {¶ 12} "A physical impairment, standing alone, does not necessarily constitute a disability * * *." Kirkendall v. UnitedParcel Service, Inc. (W.D.N.Y. 1997), 964 F. Supp. 106, 109. In fact, "a physical impairment `may affect an individual's life without becoming disabling.'" Id., citing Hazeldine v. BeverageMedia, Ltd. (S.D.N.Y. 1997), 954 F. Supp. 697. To be disabled under the statute, Fitzmaurice must demonstrate that her impairment "substantially limits" one or more of her major life activities. R.C. 4112.01(A)(13); Wiegerig v. Timken (2001),144 Ohio App.3d 664, 671.
 {¶ 13} "Substantially limits" means that an individual is:
 {¶ 14} "i) Unable to perform a major life activity that the average person in the general population can perform, or
 {¶ 15} ii) Substantially restricted as to the condition, manner or duration under which [the] individual can perform a particular major life activity as compared to the condition, manner or duration under which the average person in the general population can perform that same major life activity."29 C.F.R. § 1630.2(j)(1).
 {¶ 16} "Major life activities" are "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working."29 C.F.R. § 1630.2(i).
 {¶ 17} Fitzmaurice presented no evidence that she meets any of the above criteria. She testified that despite her multiple sclerosis, she is able to "function normally." She testified further that she can take care of herself and perform all of the functions of her former job. The only limitation that Fitzmaurice claims is that "I cannot run." This limitation, however, is insufficient to establish a disability. The inability to engage in leisure activities and sports, which require a great deal of physical vigor, does not equate with the inability to engage in normal everyday activities or job-related duties. Kirkendall,
supra. citing O'Dell v. Altec Indus., Inc. (W.D.Mo. 1995), 1995 U.S. Dist. LEXIS 15218.
 {¶ 18} Fitzmaurice has not presented any evidence that she is substantially limited in any major life activity. While not minimizing the condition that she has, we hold that she does not suffer from a disability as defined by the statute.
 {¶ 19} Fitzmaurice also argues, however, that she falls under the protection of the statute because Great Lakes regarded her as being disabled and transferred her, demoted her, and ultimately terminated her employment as a result of her perceived disability.
 {¶ 20} An individual is regarded as having a disability if the individual: "1) has a physical or mental impairment that does not substantially limit major life activities but is treated by a covered entity as constituting such limitation; 2) has a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward such impairment; or 3) has [no physical or mental impairment] but is treated by a covered entity as having a substantially limiting impairment." Bush v. Dictaphone Corp., Franklin App. No. 00AP-1117, 2003-Ohio-883, ¶¶ 40-43; Swanson, M.D. v. Univ. ofCincinnati (2001), 268 F.3d 307, 318, quoting 29 C.F.R. § 1530.2(k).
 {¶ 21} Fitzmaurice contends that there is a genuine issue of material fact regarding whether Great Lakes believed that her multiple sclerosis substantially limited her in the major life activity of working and transferred her from her position as manager of its Medical Mutual of Ohio account and subsequently demoted her and then terminated her employment because of her multiple sclerosis. We agree.
 {¶ 22} The evidence indicates that Fitzmaurice began working for Great Lakes in 1991 as a software technician on the Medical Mutual account. In 1993, she became manager of the Medical Mutual account, which was Great Lakes' largest account. The account continued to grow and Fitzmaurice eventually managed 18 people on the account. It is undisputed that the account was well-managed and Great Lakes was very pleased with Fitzmaurice's performance.
 {¶ 23} In early November 1999, Fitzmaurice informed Great Lakes, through its manager, Robert Martin, that she had been diagnosed with recurring and remitting multiple sclerosis. Within one month, Great Lakes removed Fitzmaurice from her position as manager of the Medical Mutual account. Although Great Lakes contends that Fitzmaurice asked to be moved from the account, Fitzmaurice testified that she did not want or ask to be moved from the account and, further, that when Robert Martin told her that she was being removed, he stated, "The number one thing you don't need is stress. I'm doing this for your own good."
 {¶ 24} In June 2000, Fitzmaurice asked Martin to reassign her to the Medical Mutual account. In November 2000, however, after the person who had originally replaced Fitzmaurice on the Medical Mutual account had left Great Lakes, Great Lakes assigned someone other than Fitzmaurice as the new Medical Mutual account manager. According to Fitzmaurice, when she asked Martin why she had not been considered for reassignment to the account, "Mr. Martin told me that I was no longer qualified for that job and that the job had changed. I asked why I was no longer qualified and how the job had changed. Mr. Martin responded that he had nothing to base that on." According to Fitzmaurice, when she told Martin that she believed he thought she was no longer qualified for the position because of her multiple sclerosis, "he didn't say yes, he did not say no. He hem-hawed." Fitzmaurice testified that Martin then told her "to take some time off to think about what [she] should do."
 {¶ 25} After removing Fitzmaurice from her position as account manager, Great Lakes assigned her various responsibilities at its home office, none of which utilized her extensive computer skills. Although she had no prior accounting experience, she was assigned to organize the company's accounting system and later assigned to interview job candidates. Great Lakes then offered Fitzmaurice a sales position. While she was considering this offer, she received a letter from Great Lakes terminating her employment.
 {¶ 26} In light of this evidence, we hold that there is a genuine issue of material fact regarding whether Great Lakes perceived Fitzmaurice to be substantially limited in her ability to work as a result of her multiple sclerosis and whether it transferred, reassigned and ultimately demoted her because of her disease. The evidence is obviously disputed regarding whether Fitzmaurice asked to be reassigned from her position as account manager of the Medical Mutual account or whether Great Lakes unilaterally decided to reassign her. Moreover, although Fitzmaurice subsequently asked to be returned to her position as account manager, when the job became open again, Great Lakes did not offer the position to her. Furthermore, although Great Lakes offered Fitzmaurice other jobs at the company after removing her from her position as account manager, none of the jobs offered to her utilized her extensive computer skills — skills that had repeatedly garnered Fitzmaurice an "outstanding" employee performance evaluation from Great Lakes before she was diagnosed with multiple sclerosis. Moreover, none of the positions offered to Fitzmaurice matched her previous salary as account manager.
 {¶ 27} Finally, although Fitzmaurice admits that no one at Great Lakes "directly" told her that her multiple sclerosis was a factor in its employment decisions, there is sufficient "indirect" evidence in the record to raise an issue of fact regarding Great Lakes' motivation for Fitzmaurice's transfer, reassignments and ultimate termination. According to Fitzmaurice, although Martin told her that she was no longer qualified for the account manager job because the job had changed, he refused to tell her how it had changed or why she was no longer qualified. Moreover, when Fitzmaurice accused Martin of believing that she was no longer qualified for the account manager position because of her multiple sclerosis, Martin did not deny the accuracy of her statement.
 {¶ 28} In light of this evidence, there is a genuine issue of material fact regarding whether Great Lakes regarded Fitzmaurice as disabled and whether that disability was a factor in its employment decisions. Accordingly, the trial court erred in granting summary judgment in favor of Great Lakes.
 {¶ 29} Appellant's assignment of error is sustained.
 {¶ 30} Reversed and remanded.
James J. Sweeney, P.J., and Sean C. Gallagher, J., concur.
This cause is remanded for further proceedings consistent with the opinion herein.
It is therefore ordered that appellant recover from appellee costs herein.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.