**Patricia CLARK, Plaintiff–Appellant,**

v.

**WHIRLPOOL CORPORATION,**
Defendant–Appellee.

No. 03–3582.

United States Court of Appeals,
Sixth Circuit.

Aug. 31, 2004.

Francis J. Landry, Waserman, Bryan, Landry & Honold, Toledo, OH, for Plaintiff–Appellant.

Garrison L. Phillips, Amanda Wright, Littler, Mendelson, Chicago, IL, for Defendant–Appellee.

Before: SUHRHEINRICH and GIBBONS, Circuit Judges, and LAWSON, District Judge.*

LAWSON, District Judge.

The plaintiff filed an action in the district court alleging that the defendant harassed, retaliated and discriminated against her on account of a disability in violation of Ohio law. Jurisdiction was based on diversity of citizenship. *See* 28 U.S.C. § 1332. Under Ohio Revised Code Section 4112.01 *et seq.*, the plaintiff was obliged to plead and prove that she was handicapped, her employer took an adverse action against her because she was handicapped, and she could otherwise safely perform the essential functions of her job. *See Hazlett v. Martin Chevrolet, Inc.*, 25 Ohio St.3d 279, 496 N.E.2d 478, 480 (Ohio 1986). The district court granted summary judgment to the defendant because it found that the plaintiff failed to establish a material fact question on all three elements of her discrimination claim. The district court also concluded that the record contained no evidence of harassment or retaliation based on disability or the plaintiff's pursuit of workers' compensation benefits. The plaintiff appealed and we affirm.

## I.

The plaintiff was employed as a production worker at Whirlpool's Findlay, Ohio plant from 1972 until May 2000, when she voluntarily elected to retire on account of disability. In March 1996, she suffered a work-related injury to her back, left knee, right arm, and right foot that caused her to miss work for a month. At the time of her injury, Ms. Clark's duties required her to remove plastic consoles from a press, inspect and trim them, stack them on a tote, and then push the full tote into an aisle to be picked up by a tow motor.

The plaintiff returned to work on April 15, 1996 after her doctor released her without restrictions. She resumed her same job. She also applied for and received workers' compensation benefits for the period of her injury. Ms. Clark says that despite her physician's unrestricted release to return to work, she was not fully recovered; rather she asked her doctor to impose no restrictions because she believed that Whirlpool had a policy of not allowing injured employees back into certain production jobs if they had any work restrictions. The plaintiff acknowledges that no written policy to that effect exists, and the record contains no other testimony that confirms the plaintiff's belief. In addition, a doctor employed by the defendant examined the plaintiff and placed temporary lifting, pulling and pushing, bending, and standing restrictions through May 10, 1996. When Ms. Clark returned to work, she asked for a conveyor to assist in her job functions, and the defendant accommodated that request.

Except for a four-day period in May–June of that year, the plaintiff worked continuously in her production job until April 1998 when she took family leave to

---

* The Honorable David M. Lawson, United States District Judge for the Eastern District of Michigan, sitting by designation.

care for her mother. She returned to her prior job without restrictions in June 1998, where she remained until December 7, 1998. On that date, she agreed to a voluntary layoff that lasted until January 25, 1999. When she was called back to work she was placed in the Kitchen Aid department, where, she testified, she could perform only one of the jobs. Ms. Clark was then transferred to the position of soil separator, which required more manual labor than the Kitchen Aid position. Ms. Clark did not request an accommodation at that time but worked without restrictions until February 22, 1999 when she submitted a request for medical leave, which was granted. She left work again from February 22 through April 15, 1999 on a medical leave, and that leave was extended twice ultimately through July 16, 1999. She then submitted another request for leave that was granted through August 1999. During her absence from work. Ms. Clark received payments under the defendant's sickness and accident policy, which provided coverage for six continuous months of absence.

The plaintiff returned to work on August 23, 1999 without restrictions. The defendant's sickness and accident policy began anew after the employee had worked for two weeks following six months of continuous absence. On September 27, 1999, Ms. Clark submitted a request for medical leave through January 3, 2000. That request was granted and extended several times until May 2000. The plaintiff applied for disability retirement in April 2000, received it the next month, and has not worked for the defendant since then.

Following her 1996 accident, Ms. Clark underwent several diagnostic studies of her neck and back. An X-ray of the cervical spine taken shortly after the accident revealed "good fusion of the cervical spine with good alignment and plate fixation."

J.A. 192. The X-ray also showed a break in the Synthes plate at the mid portion. J.A. 196. A myelogram performed on May 30, 1996 showed a "mild diffuse bulging disc of L4–L5, which has been unchanged in the past one year." J.A. 194.

Ms. Clark was examined by her neurosurgeon on December 2, 1997 and presented with complaints of severe pain in the toes, hip, back, neck and shoulder. She was seen again on December 29, 1998 for complaints of severe neck and lower back pain. A CT scan and myelograms obtained around that time showed "good bone fusion and plate fixation and good alignment at the level of C6–C7, although the plate appeared to be fractured in the middle.... There is also a spur and bulging disc at C5–C6, which is somewhat bigger than it used to be." J.A. 199. The reports also noted a bulging disc at L4–L5, which was unchanged, and a "vacuum phenomenon of L4–L5 with narrowing of the disc space." *Ibid.*

Subsequently a Discogram and CT scan in June or July of 1999 showed a "prominent indentation of the dural sac at C6 and evidence of annular tear of the disc in the left paracentral portion of C5–6." J.A. 227. On October 18, 1999, Ms. Clark underwent an operation for excision of a ruptured disc and spur of C5–6 and interbody fusion and titanium plate fixation. A MRI taken on June 22, 2000 revealed degenerative disc disease at multi-levels but most notably at L4–L5 and L5–S1. Clark received an epidural block of L3–L4 on August 22, 2000. Myelograms of the cervical and lumbar spines performed on February 23, 2001 revealed mild diffuse annular bulging at C4–5, L4–5 and L5–S1 but did not reveal any disc herniations.

Nearly two years after the plaintiff left Whirlpool's employ on disability retirement, she filed an action in the district court alleging disability discrimination,

harassment and retaliation pursuant to Ohio Revised Code Sections 4112.02(A) and 4112.02(I). The plaintiff contended that Whirlpool failed to accommodate her need for a lighter duty job and instead assigned her to the soil separator job, which she could not perform. She also argued that the company's 100 percent healed policy forced her back to work before she was fully recovered, and that the company did not offer her reasonable accommodations to allow her to cope with her conditions. Following discovery, Whirlpool moved for summary judgment. The district court granted Whirlpool's motion on March 18, 2003 and dismissed the case. This appeal timely followed.

## II.

On appeal, this court reviews a grant of summary judgment *de novo* using the same standard as the district court. *Henderson v. Ardco, Inc.*, 247 F.3d 645, 649 (6th Cir.2001). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). We must accept the plaintiff's evidence and draw all justifiable inferences in her favor. *Brenneman v. MedCentral Health Sys.*, 366 F.3d 412, 417 (6th Cir.2004) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). However, summary judgment is appropriate if the plaintiff fails to make a showing sufficient to establish the existence of an element that is essential to her case. *Howard v. City of Beavercreek*, 276 F.3d 802, 805 (6th Cir.2002) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

Section 4112.02(A) of the Ohio Revised Code prohibits employers from "discharg[ing] without just cause, ... refus[ing] to hire, or ... otherwise discriminat[ing] against [a] person with respect to hire, tenure, terms, conditions, or privileges of employment ... because of [a] handicap." As noted above, under that statute the plaintiff is required to establish three elements to advance a disability discrimination claim: "(1) that he or she was handicapped, (2) that an adverse employment action was taken by an employer, at least in part, because the individual was handicapped, and (3) that the person, though handicapped, can safely and substantially perform the essential functions of the job in question." *Columbus Civil Serv. Comm'n v. McGlone*, 82 Ohio St.3d 569, 697 N.E.2d 204, 206 (Ohio 1998) (citing *Hazlett*, 496 N.E.2d at 480).

■ The plaintiff contends that the district erred in finding that she had not offered sufficient evidence that she was handicapped. A handicap is defined by the Ohio statute as

a physical or mental impairment that substantially limits one or more major life activities, including the functions of caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working; a record of a physical or mental impairment; or being regarded as having a physical or mental impairment.

Ohio Rev.Code. § 4112.01(A)(13). The district court appropriately turned for guidance to federal law construing the Americans with Disabilities Act (ADA) in interpreting this statute. *See City of Columbus*, 697 N.E.2d at 206–07 (citing *Little Forest Med. Ctr. v. Ohio Civil Rights Comm'n*, 61 Ohio St.3d 607, 575 N.E.2d 1164 (Ohio 1991)). Federal regulations refer to a hypothetical "average person in the general population" as a benchmark for evaluating substantial limitations on life activities. *See* 29 C.F.R. § 1630.2(j)(1) (stating that a person is substantially lim-

ited if she is "[u]nable to perform a major life activity that the average person in the general population can perform, or [is s]ignificantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity"). Factors to consider in making this assessment include "(i) the nature and severity of the impairment; (ii) the duration or expected duration of the impairment; and (iii) the permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment." *Id.* § 1630.2(j)(2).

The plaintiff testified that throughout the day she was in constant pain due to the injuries to her neck, back, hips, feet and left knee; she had headaches that required her to take sixteen Ibuprofen each day; she took narcotic pain medication to control her discomfort; she could not control her bowels or bladder; and she had to take medication to help her sleep. J.A. at 93. However, the district court dismissed this evidence as self-serving and uncorroborated by any objective medical findings. The lower court also pointed to the conflicting medical testimony from Dr. Cheng–Te Lin, the plaintiff's treating neurologist, who stated that he could not find a medical reason the plaintiff could not work. However, the plaintiff's subjective complaints of disabling pain may be sufficient to prove that she was "handicapped," as that term is defined in the statute; there is no requirement that the plaintiff bolster that testimony with corroborating medical evidence. Moreover, Dr. Lin testified that "usually pain is subjective matters. In the way you do the physical therapy and physical examination cannot describe the amount of the pain that the patient is suffering, so you have to go along with the patient's complaints." *Id.*

at 171. In addition, Dr. Lin said that the plaintiff's ability to bend could be impaired due to the surgeries she had on her spine, and that depending on the amount of her pain, Ms. Clark would be restricted in her ability to walk distances, sit or stand for a long period of time, and bend or stoop. *Id.* at 179, 183.

We believe that the plaintiff came forward with sufficient evidence to create a question of fact on the first element of her disability discrimination claim under Ohio law, especially under the indulgent standard we must apply to the evidence at the summary judgment stage of the proceedings. She demonstrated that her injury-induced pain limited her ability to walk and work, both "major life activities" under Ohio law, to a degree that is significantly less than the average person in the general population. Reasonable minds could differ on the question of whether the plaintiff suffered from a handicap.

■ However, we agree with the district court that the plaintiff failed to establish the second and third elements of her claim because she neither suffered an adverse employment decision, nor, by her own admission, was she able to perform essential job functions.

This court evaluates adverse employment action in the context of the ADA according to the factors we adopted from the Seventh Circuit's decision in *Crady v. Liberty National Bank and Trust Co.*, 993 F.2d 132 (7th Cir.1993). *See Kocsis v. Multi–Care Management, Inc.*, 97 F.3d 876, 886 (6th Cir.1996). In *Crady*, the court stated:

> a materially adverse change in the terms and conditions of employment must be more disruptive than a mere inconvenience or an alteration of job responsibilities. A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a de-

crease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation. 993 F.2d at 136. Likewise, the Ohio state court has found that an "adverse action need not result in pecuniary loss, but must materially affect the plaintiff's terms and conditions of employment.... Changes in employment conditions that result merely in inconvenience or an alteration of job responsibilities are not disruptive enough to constitute an adverse employment action." *Peterson v. Buckeye Steel Casings,* 133 Ohio App.3d 715, 729 N.E.2d 813, 822 (Ohio Ct.App.1999) (citations omitted).

The failure of an employer to reasonably accommodate an employee's known disability can constitute adverse employment action under both federal and Ohio law. *See* 42 U.S.C. § 12112(b)(5)(A); Ohio Admin. Code § 4112–5–08(E)(1). In this case, the plaintiff contends that Whirlpool failed to provide reasonable accommodations to the plaintiff by "forcing" her to return to work under the unwritten "100 percent healed" policy, and assigning her as a soil separator when that job exceeded her physical capabilities. The district court deemed critical the undisputed fact that the plaintiff did not ask for any accommodation beyond furnishing a conveyor, which was granted. No other adjustment in work function or duties was requested.

In *Gantt v. Wilson Sporting Goods Co.,* 143 F.3d 1042, 1046–47 (6th Cir.1998), this court observed that "[t]here is no question that the EEOC has placed the initial burden of requesting an accommodation on the employee. The employer is not required to speculate as to the extent of the employee's disability or the employee's need or desire for an accommodation." (footnote omitted). Of course, when a request would be futile, we have excused the failure to make it when the need for an accommodation was obvious to the employer. *See MX Group, Inc. v. City of Covington,* 293 F.3d 326, 344 (6th Cir.2002) (stating that under the ADA, "[w]e agree with the district court, that the law requires no one to perform a useless act") (internal quotes and citations omitted). However, there is no suggestion in the record that the plaintiff's request would not have been duly considered, especially in light of the evidence that the only accommodation request the plaintiff actually made was allowed.

The plaintiff insists that Whirlpool was obliged to engage in an interactive process to reach a mutually acceptable accommodation for the plaintiff's disability. She cites *Taylor v. Phoenixville School District,* 184 F.3d 296 (3d Cir.1999), in support of that proposition. However, that case states that the employer's obligation to participate in a dialogue about accommodations is triggered by the employee's request. *See id.* at 319–20 (stating that "[t]o show that an employer failed to participate in the interactive process, a disabled employee must demonstrate: 1) the employer knew about the employee's disability; 2) *the employee requested accommodations* or assistance for his or her disability; 3) the employer did not make a good faith effort to assist the employee in seeking accommodations; and 4) the employee could have been reasonably accommodated but for the employer's lack of good faith") (emphasis added). As noted earlier, the plaintiff did not make any such request.

■ Nor did the plaintiff offer evidence that she was qualified to perform the essential functions of her job. To the contrary, she testified that she could do no work. Under the Ohio anti-discrimination statute, the employee must show that she is able to "safely and substantially perform the essential functions of the job in question." *Fitzmaurice v. Great Lakes Com-*

*puter Corp.,* 155 Ohio App.3d 724, 803 N.E.2d 854, 856 (Ohio App.2004). To meet this requirement, the plaintiff may show that she can perform the job in question with or without a reasonable accommodation. *Shaver v. Wolske & Blue,* 138 Ohio App.3d 653, 742 N.E.2d 164, 170 (Ohio App.2000). However, the district court quoted her deposition testimony in which she stated unequivocally that she was unable to work and that there were no jobs that she felt she could perform. *See* J.A. at 103. She further testified that she took medical leaves and a voluntary layoff because she was unable to work. *See* J.A. 59, 73, 77 and 89. She requested and received disability retirement. The district court correctly held that the plaintiff did not identify any position that she can work with or without restriction.

### III.

The plaintiff has not included her claims of harassment or retaliation among her issues on appeal. She has not presented any arguments as to the district court's dismissal of those claims in either her opening brief or her reply brief. "We normally decline to consider issues not raised in the appellant's opening brief." *Bickel v. Korean Air Lines Co., Ltd.,* 96 F.3d 151, 153 (6th Cir.1996) (quoting *Priddy v. Edelman,* 883 F.2d 438, 446 (6th Cir.1989)); *see* Fed. R.App. P. 28(a). Claims not raised in the briefs are considered to be waived. *See Bickel,* 96 F.3d at 153 (declining to consider issue not raised in the opening brief). Therefore, we will not address those issues.

### IV.

Although we disagree with the district court's ruling on whether the plaintiff raised a triable issue concerning whether she was handicapped, we find no error in that court's conclusion that the plaintiff's evidence was insufficient on the second and third elements of her discrimination claim. Summary judgment for the defendant is required when the plaintiff fails to establish all of the essential elements of her cause of action. *Howard,* 276 F.3d at 805. Accordingly, we **AFFIRM** the judgment of the district court.