OPINION
{¶ 1} Appellant, Catherine Hammercheck, appeals from the judgment of the Trumbull County Court of Common Pleas granting the motion for summary judgment of appellee, Coldwell Banker First Place Real Estate ("First Place"). On review, we affirm the judgment entry of the trial court.
 {¶ 2} On September 22, 2005, Hammercheck filed a complaint in the Trumbull County Common Pleas Court against First Place alleging age discrimination, disability *Page 2 
discrimination, and violation of public policy. First Place filed an answer on November 14, 2005.
 {¶ 3} On December 28, 2006, First Place filed its motion for summary judgment pursuant to Civ.R. 56(C). On January 26, 2007, Hammercheck filed a response in opposition to First Place's motion for summary judgment.
 {¶ 4} According to the depositions and affidavits in the record, the following facts gave rise to this appeal. Hammercheck was hired as a secretary in September 1997 by Brokers 3 Realty Group. First Place acquired Brokers 3 Realty Group on June 4, 2002. First Place retained almost all Brokers 3 Realty Group employees. At First Place, Hammercheck was employed as a secretary, earning $7.75 per hour. Hammercheck did not receive health care benefits.
 {¶ 5} According to the deposition of Hammercheck, she was diagnosed with cancer of the esophagus in August 2002. In September 2002, Hammercheck left First Place and began her cancer treatments, which included chemotherapy, radiation, and surgery. 80 percent of Hammercheck's esophagus was removed.
 {¶ 6} Upon leaving First Place, Hammercheck believed she was placed on an unpaid leave of absence. While no one promised Hammercheck a job upon her return, she stated the employees of First Place, including the manager and broker, "wished me well, told me to hurry up and get well and hurry back."
 {¶ 7} During her convalescence, Hammercheck would often visit the employees of First Place and keep them apprised of her condition. While she stated no one asked her to give reports, she "felt as though it was my duty, because they had a right to know how I was coming and how I was progressing." In May 2003, Hammercheck was *Page 3 
advised by her doctor that she was able to return to work. Upon learning this information, she called First Place and scheduled an appointment with Ray Knight, the manager at First Place. Mr. Knight, however, cancelled the appointment. Shortly thereafter, Mr. Knight left employment with First Place. Hammercheck then contacted the human resources department and was told there were no open positions.
 {¶ 8} When asked if there is "anything you can't do today that you used to be able to do, as a result of your cancer," Hammercheck stated, "no." Yet, according to Hammercheck's affidavit attached to her motion in opposition for summary judgment, she states, "I am unable to eat certain foods such as salads and meats cooked certain ways because the acid backs up into my throat and burns causing me to vomit. In the morning I am constantly nauseated. The nausea is sometimes unbearable and I have to lay down." Further, Hammercheck avers she is currently able to perform the physical activities of a secretary, such as computer operation and answering the phones.
 {¶ 9} According to the affidavit of Eric Caspary, the president of First Place, attached to First Place's motion for summary judgment, First Place did not offer its employees unpaid leave of absence in 2002, or any time thereafter. In addition, First Place has no documentation establishing Hammercheck ever requested to be placed on an unpaid, indefinite medical leave. Mr. Caspary also stated that since the office at First Place is thinly staffed, attendance is an essential function of the job of secretary.
 {¶ 10} Also attached to First Place's motion for summary judgment is the affidavit of Karen Tomlinson, an assistant vice president at First Place Bank. First Place Bank is affiliated with First Place. Ms. Tomlinson, before becoming assistant vice president, was employed as a human resources generalist. She avers that Hammercheck did *Page 4 
contact the human resources department seeking to be rehired and was informed there were no available positions. Hammercheck was invited to submit a resume; yet, First Place has no record that Hammercheck ever submitted a resume.
 {¶ 11} On January 30, 2007, the Trumbull County Common Pleas Court granted First Place's motion for summary judgment. The trial court rejected Hammercheck's age discrimination claim since she failed to timely file it. The trial court also found Hammercheck's public policy cause of action to be nonmeritorious since a claim for tortious violation of public policy does not stand where a statute addresses the public policy and provides a specific legal remedy. Finally, the trial court granted summary judgment in favor of First Place as to Hammercheck's disability discrimination claim. Hammercheck does not appeal the trial court's decision as to her age discrimination and public policy claims. However, Hammercheck appeals the trial court's decision to grant summary judgment on her disability discrimination cause of action.
 {¶ 12} Hammercheck raises two assignments of error. Her first assignment of error states:
 {¶ 13} "The trial court erred to the prejudice of appellant in it's [sic] finding that `a restrictive diet' was the issue as to a qualifying disability under R.C. 4112 et. seq."
 {¶ 14} In order for summary judgment to be granted, the moving party must prove:
 {¶ 15} "(1) [N]o genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to *Page 5 
the party against whom the motion for summary judgment is made."Mootispaw v. Eckstein (1996), 76 Ohio St.3d 383, 385.
 {¶ 16} As stated by the Supreme Court of Ohio:
 {¶ 17} "[T]he moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifyingthose portions of the record which demonstrate the absence of a genuineissue of fact on a material element of the nonmoving party's claim. The `portions of the record' to which we refer are those evidentiary materials listed in Civ.R. 56(C), such as the pleadings, depositions, answers to interrogatories, etc., that have been filed in the case."Dresher v. Burt (1996), 75 Ohio St.3d 280, 296. (Emphasis in original.)
 {¶ 18} If the moving party meets this initial burden, the nonmoving party has a reciprocal burden, pursuant to Civ.R. 56(E), to respond and provide evidence demonstrating a genuine issue of material fact. If the nonmoving party fails to meet this burden, the trial court may enter summary judgment against that party. Civ.R. 56(E).
 {¶ 19} Appellate courts review a trial court's entry of summary judgment de novo. Brown v. Scioto Cty. Bd. of Commrs. (1993),87 Ohio App.3d 704, 711. "De novo review means that this court uses the same standard that the trial court should have used, and we examine the evidence to determine whether as a matter of law no genuine issues exist for trial." Brewer v. Cleveland Bd. of Edn. (1997), 122 Ohio App.3d 378,383, citing Dupler v. Mansfield Journal (1980), 64 Ohio St.2d 116,119-120. Furthermore, an appellate court must evaluate the record "in a light most favorable to the nonmoving party." Link v. LeadworksCorp. (1992), 79 Ohio App.3d 735, 741. If *Page 6 
reasonable minds could find for the party opposing the motion for summary judgment, it must be overruled. Id.
 {¶ 20} Hammercheck alleged discrimination under Ohio Revised Code Chapter 4112, Ohio's antidiscrimination statute. Hammercheck contends that "one or more of her major life activities, notably eating, is substantially limited, and, therefore, she suffers from a disability as defined under R.C. 4112 et seq."
 {¶ 21} In the instant case, the trial court held that Hammercheck is not restricted in any major life function or activity under the standard established by law. Therefore, Hammercheck's limitations did not constitute a disability under R.C. 4112.01. Thus, the trial court granted First Place's motion for summary judgment on the issue of disability discrimination both at the time Hammercheck stopped working and at the time Hammercheck attempted to return.
 {¶ 22} To establish a prima facie case of disability discrimination, the person seeking relief must demonstrate (1) that he or she was disabled, (2) that an adverse employment action was taken by an employer, at least in part, because the individual was disabled, and (3) that the person, though disabled, can safely and substantially perform the essential function of the job in question. Hazlett v. MartinChevrolet, Inc. (1986), 25 Ohio St.3d 279, 281. See, also,Fitzmaurice v. Great Lakes Computer Corp., 155 Ohio App.3d 724,2004-Ohio-235, at ¶ 6.
 {¶ 23} As defined under R.C. 4112.01(A)(13), a disability is "a physical or mental impairment that substantially limits one or more major life activities." There is a three-part test for applying this definition. Bragdon v. Abbott (1998), 524 U.S. 624, 631. First, it must be determined whether Hammercheck has an "impairment." Second, whether *Page 7 
the activity on which she relies, eating, is a "major life activity." Third, whether her impairment substantially limits the major life activity on which she relies. Id. Further, it should be noted that Ohio courts reviewing discrimination claims routinely look to regulations and cases interpreting the American with Disabilities Act (ADA) for guidance in interpretation of Ohio law. Columbus Civ. Serv. Comm. v. McGlone
(1998), 82 Ohio St.3d 569, 573.
 {¶ 24} Hammercheck was diagnosed with cancer in August 2002. R.C.4112.01 (A)(16)(a)(iii) lists cancer as a "physical or mental impairment." A diagnosis of cancer, however, does not automatically mean one has a disability under the statute. Hood v. Diamond Products,Inc. (1996), 74 Ohio St.3d 298, 303. Because not every cancer patient is disabled by law, the determination should be made on a "case-by-case basis." Id. See, also, Fitzmaurice v. Great Lakes Computer Corp.,155 Ohio App.3d 724, 2004-Ohio-235, at ¶ 12 (holding that even though multiple sclerosis is a listed physical impairment, plaintiff must still "demonstrate that her impairment `substantially limits' one or more of her major life activities").
 {¶ 25} Next, Hammercheck identifies eating as her "major life activity" that is substantially limited. "Major life activities" are "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." Section 1630.2(i), Title 29, C.F.R. Furthermore, since eating is of central importance to daily life and the life process, it has been considered a "major life activity" within the meaning of the ADA. Waldrip v. GeneralElec. Co. (C.A.5, 2003), 325 F.3d 652, 655. (Citations omitted.) *Page 8 
 {¶ 26} Finally, Hammercheck contends she "is substantially restricted as to the condition, manner, or duration, i.e. eating, as compared with the average person in the general population." The Code of Federal Regulations defines "substantially limits" as the following:
 {¶ 27} "(i) Unable to perform a major life activity that the average person in the general population can perform; or
 {¶ 28} "(ii) Substantially restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity." Section 1630.2(j)(1), Title 29, C.F.R.
 {¶ 29} "The Supreme Court of the United States has recently defined the phrase `substantially limits' even more narrowly by defining it as, `an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives. The impairment's impact must be permanent or long-term.'"Yamamoto v. Midwest Screw Prods., 11th Dist. No. 2000-L-200, 2002-Ohio-3362, at ¶ 23, quoting Toyota Motor Mfg., Kentucky, Inc. v.Williams (2002), 534 U.S. 184.
 {¶ 30} Factors considered in determining whether an impairment substantially limits a major life activity include: "(i) the nature and severity of the impairment; (ii) the duration or expected duration of the impairment; and (iii) the permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment." Section 1630.2(j)(2)(i)-(iii), Title 29, C.F.R. *Page 9 
 {¶ 31} In order to overcome First Place's motion for summary judgment, Hammercheck must set forth specific facts to show there is a genuine issue to be tried. In essence, Hammercheck contends that her two-page affidavit attached to her brief in opposition to the motion for summary judgment should have been sufficient to withstand First Place's motion for summary judgment.
 {¶ 32} Hammercheck claims her cancer "substantially limits" her ability to eat. However, a review of the record, construing the evidence most strongly in favor of Hammercheck, fails to provide evidence of this contention. In her deposition, Hammercheck was asked, "as a result of your cancer, is there anything you can't do today that you used to be able to do?" Hammercheck responded "no." The only evidentiary material Hammercheck presents in opposition to the motion for summary judgment is her affidavit. In that affidavit, Hammercheck states, "I am unable to eat certain foods such as salads and meats cooked certain ways because acid backs up into my throat and burns causing me to vomit." Hammercheck has failed to present sufficient evidence that her inability to eat "salads and meats cooked certain ways" constitutes asignificant restriction on Hammercheck's ability to eat, or to perform any other major life activity. Further, Hammercheck states in her affidavit, "[i]n the morning I am constantly nauseated. The nausea is sometimes unbearable and I have to lay down." However, Hammercheck does not demonstrate how her nausea prevents or substantially limits her from doing activities that are of central importance to most people's daily lives.
 {¶ 33} Further, it should be noted that this court has held "`"a party may not create a factual issue by filing an affidavit, after a motion for summary judgment has *Page 10 
been made, which contradicts his earlier deposition testimony."'"McCain v. Cormell (June 30, 1994), 11th Dist. No. 93-T-4967, 1994 Ohio App. LEXIS 2928, at *5. (Citations omitted.) Upon a review of the evidence viewed most favorably for Hammercheck, as required by Civ.R. 56(C), we agree with the trial court that she is not restricted in any major life activity function or activity under the standard established by law. Therefore, Hammercheck's limitations do not constitute a disability under R.C. 4112.01.
 {¶ 34} Moreover, Hammercheck does not provide any evidence to satisfy the second prong of disability discrimination — specifically, that First Place took an adverse employment action, at least in part, because she was disabled. Essentially, Hammercheck is arguing that the adverse employment action was the failure to rehire her after an indefinite leave. However, First Place was not required to hold her position on an indefinite basis.
 {¶ 35} In addition, Hammercheck, when asked "[d]o you think that Mr. Knight didn't want you to work at First Place because you had cancer?" stated, "I don't know whether he wanted me not there, but I don't — I truly believe he didn't want me there because of age. I just get that." Hammercheck ceased employment due to circumstances completely outside the control of First Place. There is no evidence whatsoever that First Place's decision not to rehire Hammercheck was related to her alleged disability. First Place, as they were entitled to do, simply hired another employee to fill the position. After a thorough review of the evidentiary material in the record, we conclude that the trial court did not err in rendering summary judgment in favor of First Place. *Page 11 
 {¶ 36} Hammercheck's first assignment of error is without merit.
 {¶ 37} In Hammercheck's second assignment of error, she states:
 {¶ 38} "The trial court erred to the prejudice of appellant in it's [sic] cursory holding `that plaintiff ceased working for defendant due to circumstances completely outside the control of defendant.'"
 {¶ 39} Hammercheck brought her claim of disability discrimination pursuant to Ohio civil rights law, set forth in Chapter 41 of the Ohio Revised Code. The Supreme Court of Ohio has held that discrimination cases brought in state courts should be construed in accordance with federal guidelines and requirements. Barker v. Scovill, Inc. (1983),6 Ohio St.3d 146, 147. R.C. 4112.02(A) sets forth the applicable discrimination provision in employment under the Ohio Civil Rights Act. R.C. 4112.02(A) states:
 {¶ 40} "It shall be an unlawful discriminatory practice * * * [f]or any employer, because of the race, color, religion, sex, national origin, disability, age, or ancestry of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment."
 {¶ 41} Neither Ohio's disability statute nor the ADA require an employer to give an employee an indefinite leave of absence when the employee cannot provide the expected duration of his or her impairment.Harris v. Circuit Court (C.A.6, 2001), 21 Fed. Appx.431, 432, 2001 U.S. App. LEXIS 23772. See, Taylor v. Pepsi-Cola Co. (C.A.10, 1999),196 F.3d 1106, 1110 (keeping plaintiff on indefinite leave was not a *Page 12 
reasonable accommodation where he had informed employer he "could not advise when and under what conditions he could return to any work").
 {¶ 42} In the case sub judice, we conclude that summary judgment in favor of First Place was appropriate. Hammercheck contends she did not quit her job; rather, a time was specified by management since the employees of First Place, including the manager and broker, told her to "have the surgery and come back to work, when ready." Yet, reasonable finders of fact would not find either of these things to be true based on the evidentiary material submitted. This court is not prepared to allow casual remarks, lacking in detail and terms, to be transformed into self-executing contracts of employment.
 {¶ 43} There is simply no evidence to support her argument that a position was guaranteed upon her return. In fact, in her deposition, Hammercheck stated the following:
 {¶ 44} "Q: * * * But again, nobody ever told you that there would definitely be a position available for you when you were able to come back to work?
 {¶ 45} "MR. MASEK: Object. Asked and answered.
 {¶ 46} "A: Nobody said I didn't have a job.
 {¶ 47} "Q: Okay. But did anybody say you did have a job when you were able to come back to work?
 {¶ 48} "A: When they wish you well and tell you to hurry up and come back, you assume you have a job."
 {¶ 49} Additionally, when asked in her deposition whether she asked anyone if she would have a job with First Place, Hammercheck replied "no." She further stated, "I *Page 13 
assumed that — I had been there for years and I assumed that when they tell you to hurry up and come back that you have a job waiting for you."
 {¶ 50} Hammercheck further maintains that she acted in reliance of the above stated comments and therefore, would regularly report her progress to the employees. However, Hammercheck, in her deposition, stated First Place never asked her to give these types of reports, but she "felt as though it was my duty, because they were my employer and I thought they had a right to know how I was coming and how I was progressing." In fact, Hammercheck admits First Place did not have a policy that provides for an indefinite leave of absence.
 {¶ 51} Also, Hammercheck argues that upon her attempt to return to First Place, Mr. Knight cancelled her appointment. Subsequently, she contacted the payroll department, which indicated she was still on the payroll records. Yet, Hammercheck, in her deposition, testified that she did not believe her disability played a role in the decisions made by First Place relative to her employment. Hammercheck stated the following:
 {¶ 52} "Q: Do you think that Mr. Knight didn't want you to work at First Place because you had cancer?
 {¶ 53} "A: I don't know whether he wanted me not there, but I don't — I truly believe he didn't want me there because of age. I just get that."
 {¶ 54} Thus, after a thorough review of the record, construing the evidence most strongly in favor of Hammercheck, we conclude summary judgment is warranted.
 {¶ 55} Hammercheck's second assignment of error is without merit.
 {¶ 56} The judgment of the trial court is affirmed. *Page 14 
CYNTHIA WESTCOTT RICE, P.J., concurs,
COLLEEN MARY OTOOLE, J., dissents with Dissenting Opinion.