*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 12a0255p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

_____

TAMMY ROSEBROUGH,

      *Plaintiff-Appellant*,

    *v.*

BUCKEYE VALLEY HIGH SCHOOL,

      *Defendant-Appellee.*

No. 10-4057

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 09-00182—Gregory L. Frost, District Judge.

Argued: January 13, 2012

Decided and Filed:  August 8, 2012

Before:  KENNEDY, MARTIN, and STRANCH, Circuit Judges.

_____

**COUNSEL**

**ARGUED:** Daniel H. Klos, Columbus, Ohio, for Appellant.  John C. Albert, CRABBE, BROWN & JAMES, LLP, Columbus, Ohio, for Appellee.  **ON BRIEF:** Daniel H. Klos, Columbus, Ohio, for Appellant.  John C. Albert, CRABBE, BROWN & JAMES, LLP, Columbus, Ohio, for Appellee.

_____

OPINION

_____

    JANE B. STRANCH, Circuit Judge.  Plaintiff Tammy Rosebrough appeals the district court's grant of summary judgment in favor of Defendant Buckeye Valley High School in her suit alleging discrimination and disparate treatment under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and the Ohio Revised Code, § 4112.02 *et seq.*, and alleging intentional infliction of emotional distress.  The district court held for Buckeye Valley on all claims based solely on the finding that Rosebrough

was not a qualified individual under the ADA.   For the following reasons, we **REVERSE** the judgment of the district court and **REMAND** for further proceedings.

## I.  BACKGROUND

Tammy Rosebrough was born without a left hand.   In September 2007, Rosebrough applied for a cook's position at Buckeye Valley North High School. Rosebrough interviewed with department supervisor Rodger Cope, who told her the school was in desperate need of bus drivers and asked if she would be interested in that position.   Cope mentioned he would need to check with the State to see if there were any restrictions that would prevent Rosebrough from driving a school bus.   Rosebrough said she wanted to speak with her family, then called the next day to say she was interested in the position.   Cope told her he was still waiting to hear back from the State about the restriction issue.   In the meantime, Cope released a memorandum to employees citing the school's need for bus drivers.

Rosebrough later called Cope to ask "what was the hold up," and Cope said again he would contact the State.   A few days later, on October 3 or 4, Cope called Rosebrough to inform her that a waiver is required from the Ohio Department of Education before an individual who is missing a limb is allowed to operate a school bus and told her to come to the office to pick up the waiver forms.   Rosebrough received approval of the waiver from the Department of Education several weeks later on January 23, 2008.  The State rejected Rosebrough's first two waiver submissions because the first waiver's medical evaluation was completed by a physical therapist, instead of the required orthopedic surgeon or physiatrist, and the second waiver was not filled out completely.   Rosebrough testified she relied on Cope's instructions and "filled out what [Cope] told me to fill out."

One or two days before Rosebrough received her waiver, Sandy Presley, a Buckeye Valley bus driver trainer, contacted Rosebrough to schedule her training, which began soon thereafter with another trainer, Deanna Carper.  On February 15, Rosebrough

met with Cope to discuss some issues she was having with her training. Relevant to this case, Rosebrough complained that Presley made discriminatory comments to her about her disability on two separate occasions. On February 5, Presley said Rosebrough "was going to need a lot more [training] hours . . . because of [her] arm" than another trainee who "knew the bus because he worked on cars and he was a race car driver." On February 9, in front of Carper and the other trainee, Presley told Rosebrough she "won't be able to drive bus 4 or 11 . . . because of [her] hand" since the doors on those buses are difficult to open. Presley denies making statements referencing Rosebrough's disability. Cope told Rosebrough he would speak with Presley about the comments.

Cope called Rosebrough for a follow-up meeting in his office where he said Carper and Presley told him Rosebrough was speeding, braking too fast, and not listening to instructions. Rosebrough testified Cope said "it was his trainer's responsibility to make sure that I knew what I was doing and that it was his job to fire me if I wasn't going to do the proper job." She testified Cope said she "had become high maintenance," slammed his fist down on the desk, and said "[t]he parents at Buckeye Valley will not be happy with you as a driver." Rosebrough believed Cope meant the parents would not want Rosebrough because she had a hand missing. On February 19, Rosebrough and her husband met with the superintendent, John Schiller, who said he and Cope would discuss the issue. When Rosebrough did not hear anything from Schiller for several days, she called him and he apologized for not getting back with her and said "they would be more than happy to have [her] as a driver at Buckeye Valley."

After Rosebrough resumed her training, Carper suggested she contact the State to schedule her commercial driver's license ("CDL") certification test which required Rosebrough to attend with a trainer and a school bus. Carper told Rosebrough she could come any day or time, so Rosebrough scheduled her test for March 20. On the morning of March 19, Carper called Rosebrough to say she could not attend the test because Cope had refused to let other bus drivers split Carper's bus route and she was unable to get a

substitute.  Rosebrough cancelled the test with the State and did not ask the State or Carper to reschedule because she "believe[d] there would never be a substitute driver" available to allow a trainer to take her to get her test "after everything they had done to me."

After canceling her test with the State, Rosebrough called Superintendent Schiller and requested her paperwork so she could finish her training and obtain her CDL elsewhere.  Over the next several months, Rosebrough contacted several other testing centers and school districts but learned she could only be trained by the school district that ultimately hired her.  Rosebrough never contacted Buckeye Valley again to return and finish her training.

On March 11, 2009, Rosebrough filed suit against Buckeye Valley asserting violations of the ADA and the Ohio Revised Code, § 4112.02 *et seq.*, for discrimination due to a disability, a perceived disability, and disparate treatment.  She also alleged intentional infliction of emotional distress.  In 2010, Buckeye Valley moved for summary judgment asserting Rosebrough could not establish a prima facie case on any of her claims, and Buckeye Valley was entitled to political subdivision immunity on her tort claim and was not liable for punitive damages as a matter of law.  Finding that Rosebrough was not qualified to be a bus driver because she did not have a CDL, the district court granted summary judgment to Buckeye Valley on all claims. Rosebrough timely appealed.

## II.  ANALYSIS

### A.     Standard of Review

This court reviews a district court's grant of summary judgment de novo.  *Geiger v. Tower Auto.*, 579 F.3d 614, 620 (6th Cir. 2009).  Summary judgment is appropriate if there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a) (2010).  The moving party has the burden of proving the absence of a genuine issue of material fact and its entitlement to summary

judgment as a matter of law.  *Celtex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  All facts, including inferences, are viewed in the light most favorable to the nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  The central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003) (en banc) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)).  Buckeye Valley moved for summary judgment, therefore this court must accept the facts alleged by Rosebrough as true and draw all reasonable inferences in her favor.

## B.        Disability Discrimination

Neither party argued below or on appeal that an action for handicap discrimination under Ohio law employs a different legal analysis than that for disability discrimination under the ADA.  "[B]ecause Ohio case law tends to suggest that it entails the same legal analysis as that under the ADA," we may review Rosebrough's state and federal claims solely under the ADA analysis.  *Brenneman v. MedCentral Health Sys.*, 366 F.3d 412, 418 (6th Cir. 2004); *see also Martin v. Barnesville Exempted Vill. Sch. Dist. Bd. of Educ.*, 209 F.3d 931, 934 n.2 (6th Cir. 2000) ("Both federal and Ohio disability discrimination actions require the same analysis."); *City of Columbus Civ. Serv. Comm'n v. McGlone*, 697 N.E.2d 204, 206 (Ohio 1998) (Because the "federal Americans with Disabilities Act (ADA) is similar to the Ohio handicap discrimination law . . . [w]e can look to regulations and cases interpreting the federal Act for guidance in our interpretation of Ohio law.").

Buckeye Valley argued on summary judgment that Rosebrough could not establish any element of a prima facie case of discrimination on any of her claims.[1]  A prima facie case of discriminatory discharge requires a plaintiff to show (1) she is disabled; (2) she was otherwise qualified for the position, with or without reasonable

---

[1] Rosebrough appears to rely on circumstantial evidence of discrimination and does not challenge the district court's citation to indirect evidence tests.

accommodation; (3) she suffered an adverse action; (4) the employer knew or had reason to know of her disability; and (5) she was replaced or the job remained open.**2** *Plant v. Morton Int'l Inc.*, 212 F.3d 929, 936 (6th Cir. 2000). "An individual is considered 'disabled' under the ADA if she (1) 'has a physical or mental impairment that substantially limits one or more of the major life activities of such individual,' (2) 'has a record of such impairment,' or (3) is regarded by her employer as having such an impairment." *Gruener v. Ohio Cas. Ins. Co.*, 510 F.3d 661, 664 (6th Cir. 2008) (citation omitted); *see also* 42 U.S.C. § 12102(2).

The district court assumed without deciding that Rosebrough was disabled under the ADA but determined that she failed to show the second element because she lacked a CDL and thus was not "otherwise qualified" for the position. The court granted summary judgment to Buckeye Valley on all claims on this one basis. The district court did not reach the last three elements of the prima facie case. On appeal, the parties have focused their briefing on whether Rosebrough was a qualified individual under the ADA.

### 1.	Qualified Individual

All discrimination claims brought by Rosebrough require her to show "she was otherwise qualified for the position, with or without reasonable accommodation." *See Hopkins*, 196 F.3d at 660. The ADA defines a "qualified individual" as follows:

> an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires. For the purposes of this subchapter, consideration shall be given to the employer's judgment as to what functions of a job are essential, and if an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job.

---

**2**In a disparate treatment claim, the plaintiff can satisfy the fifth element of the prima facie case by showing that similarly situated non-disabled employees were treated more favorably. *See Hopkins v. Elec. Data Sys. Corp.*, 196 F.3d 655, 660 (6th Cir. 1999).

42 U.S.C. § 12111(8).  The district court held that a CDL is required to perform the essential functions of serving as a school bus driver.  Because Rosebrough did not have a CDL, the court held she was not "otherwise qualified" to be a school bus driver and dismissed her claims.

The district court relied on the Second Circuit case *Kinneary v. City of New York*, 601 F.3d 151 (2d Cir. 2010).  In *Kinneary*, the court held that a sludge boat captain whose captain's license had expired was not "otherwise qualified" to be a captain because he could not perform the essential functions of his job without his license.  *Id.* at 157.  This case would be persuasive if we were reviewing claims by a school bus driver; in fact, Rosebrough admits that a CDL is required in order for her to perform as a school bus driver.  However, Rosebrough asserted below, and again more carefully on appeal, that she was hired "as an employee without wages, provisionally subject to being issued a CDL," (R. 21, Response in Opposition to Summary Judgment Motion, at 15-16), in other words, as a "bus driver trainee," (Appellant Br. at 23).[3]

The plain language of the ADA covers discrimination on the basis of disability during job training. 42 U.S.C. § 12112(a) ("No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.").  The coverage provisions include this expansive list, extending beyond recognized traditional employment activities, to prevent periods—including training periods—during which discrimination might be undertaken with impunity.  Thus, the statutory inclusion of "job training" protects individuals while they receive the training required to perform the essential functions of their ultimate job position; it protects them from discrimination that could deny them the means to obtain qualifications necessary to undertake that

---

[3]Rosebrough used the phrase "bus driver trainee" for the first time on appeal.  Buckeye Valley responds that Rosebrough has waived the argument that she was "otherwise qualified" to be a bus driver trainee.  But Rosebrough argued to the district court that she was discriminated against during her training period.  Thus, the argument is properly before us.

position.  It cannot be disputed that the ADA covers individuals in training without regard to whether they are called employees, conditionally-hired employees, trainees, or a title specific to one employer.  *See United States v. Miss. Dep't of Public Safety*, 321 F.3d 495, 500 n.4 (5th Cir. 2003) (holding the ADA protects trainee at patrol safety academy from discrimination); *Desmond v. Mukasey*, 530 F.3d 944, 967 (D.C. Cir. 2008) (finding a genuine issue of material fact requiring trial on discrimination claim by FBI trainee who had not graduated from FBI academy).

When the events at issue in this litigation occurred, Rosebrough was in the job training period necessary to obtain her CDL and learn how to perform as a school bus driver.  Buckeye Valley does not state the essential functions of Rosebrough's training position.  However, in reviewing step two of Rosebrough's prima facie case, it is unnecessary to speculate as to whether she was "otherwise qualified" for the training position because Buckeye Valley concedes Rosebrough "was qualified to be a 'trainee,' was in fact a 'trainee,' and was given the training."  (Appellee Br. at 26).  It is Rosebrough's ADA-covered position as a trainee that is at issue, and there can be no logical basis for requiring her *to have* a CDL to be "otherwise qualified" for the position of training *to obtain* a CDL.  Therefore, having a CDL was not necessary for Rosebrough to perform the essential functions of her training position, and the district court erred in holding otherwise.

### 2.     Remaining Prima Facie Elements

The district court did not address any prima facie elements of Rosebrough's six discrimination claims except for the "otherwise qualified" element and neither party briefed the remaining elements on appeal.  We remand to allow the district court to determine in the first instance whether Rosebrough has shown genuine issues of material fact on the remaining prima facie elements.  *See Yeschick v. Mineta*, 521 F.3d 498, 506 (6th Cir. 2008) (finding a genuine issue of material fact on the sole issue on appeal and remanding for the district court to determine in the first instance whether the plaintiff met the remaining elements of his prima facie ADEA case); *White v. Burlington*

*Northern & Santa Fe R. Co.*, 364 F.3d 789, 808 (6th Cir. 2004) (finding remand appropriate where consideration of remaining issue requires "a careful examination of the entire record"); *Zambetti v. Cuyahoga Cmty. Coll.*, 314 F.3d 249, 261-62 (6th Cir. 2002) (reversing on grounds for summary judgment below and remanding consideration of remaining arguments in Title VII case).

## C.     Intentional Infliction of Emotional Distress

In order to defeat a motion for summary judgment on a claim for intentional infliction of emotional distress under Ohio law, a plaintiff must present evidence creating a genuine issue of material fact:

> (1) that the actor either intended to cause emotional distress or knew or should have known that actions taken would result in serious emotional distress to the plaintiff, (2) that the actor's conduct was so extreme and outrageous as to go beyond all possible bounds of decency and was such that it can be considered as utterly intolerable in a civilized community, (3) that the actor's actions were the proximate cause of the plaintiff's psychic injury, and (4) that the mental anguish suffered by the plaintiff is serious and of a nature that no reasonable man could be expected to endure it.

*Burkes v. Stidham*, 668 N.E.2d 982, 989 (Ohio Ct. App. 1995) (citation omitted); *accord Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995).  Serious emotional distress requires an emotional injury that is both severe and debilitating.  *Banford v. Aldrich Chem. Co., Inc.*, 932 N.E.2d 313, 319 (Ohio 2010).

As with Rosebrough's discrimination claims, the district court granted Buckeye Valley summary judgment on her emotional distress claim based solely on its analysis of the "otherwise qualified" prong.  The court held "there cannot be a genuine issue of material fact with respect to 'outrageous' conduct by Buckeye Valley in light of the fact that this Court found that Rosebrough failed to make out a *prima facie* claim of disability discrimination."  Because the district court erred in its analysis of Rosebrough's discrimination claims, its rejection of those claims cannot form the basis for rejecting her emotional distress claim.

It is certainly far from clear on this record that Rosebrough could show a genuine issue of material fact regarding whether Buckeye Valley's conduct was extreme and outrageous. *See Courie v. Alcoa Wheel & Forged Prods.*, 577 F.3d 625, 633 (6th Cir. 2009) (citing *Baab v. AMR Servs. Corp.*, 811 F. Supp. 1246, 1269 (N.D. Ohio 1993) ("[T]o say that Ohio courts narrowly define 'extreme and outrageous conduct' would be something of an understatement.")).  However, as with Rosebrough's discrimination claims, the district court did not reach the remaining elements of her emotional distress claim and the other elements were not briefed on appeal.  The district court should be provided with the opportunity to consider this claim, and Buckeye Valley's asserted defenses, in the first instance.

## III.  CONCLUSION

For the foregoing reasons, we **REVERSE** the district court's grant of summary judgment and **REMAND** for further proceedings consistent with this opinion.