[Cite as *Anderson v. Ohio Bell Tel. Co.*, 2017-Ohio-7318.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 104858**

## JACINDA ANDERSON

PLAINTIFF-APPELLANT

vs.

## THE OHIO BELL TELEPHONE COMPANY

DEFENDANT-APPELLEE

**JUDGMENT:**
REVERSED AND REMANDED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-13-798525

**BEFORE:** Jones, J., S. Gallagher, P.J., and Blackmon, J.

**RELEASED AND JOURNALIZED:** August 24, 2017

**ATTORNEY FOR APPELLANT**

Steven J. Forbes
Norchi Forbes, L.L.C.
23240 Chagrin Blvd., Suite 210
Cleveland, Ohio 44122


**ATTORNEYS FOR APPELLEE**

Laura Lindner
Littler Mendelson P.C.
111 East Kilbourn Avenue, Suite 1000
Milwaukee, WI 53202

Amy Ryder Wentz
Littler Mendelson P.C.
1100 Superior Avenue, 20th Floor
Cleveland, Ohio 44114

LARRY A. JONES, SR., J.:

**{¶1}** Plaintiff-appellant Jacinda Anderson ("Anderson") appeals from the trial court's January 24, 2016 judgment that, in part, granted summary judgment in favor of defendant-appellee, The Ohio Bell Telephone Company, a.k.a. AT&T ("Ohio Bell"), on Anderson's disability discrimination claims. For the reasons that follow, we reverse and remand.

**Background**

**{¶2}** Beginning in August 2005, Anderson worked for Ohio Bell; she had previously worked for Michigan Bell from 1995 until she transferred to Ohio Bell. In August 2009, she sought leave of absence for an alleged medical condition. In November 2009, the company terminated her employment.

**{¶3}** In 2013, Anderson filed this action against Ohio Bell, alleging that she was terminated because of a disability and that the company failed to provide her with a reasonable accommodation for the disability. Ohio Bell answered the complaint and asserted a fraud counterclaim against Anderson.

**{¶4}** Both parties filed motions for summary judgment: Anderson filed a motion for summary judgment on the company's fraud counterclaim, and Ohio Bell filed a motion for summary judgment on both Anderson's complaint and its fraud counterclaim. The trial court granted Ohio Bell's motion as it related to Anderson's complaint, but denied both parties' motions as they related to the company's fraud counterclaim. After the trial court's ruling, the telephone company voluntarily dismissed its fraud counterclaim.

Anderson now appeals, and for her sole assignment of error contends that "the trial court erred by granting summary judgment in favor of Ohio Bell Company and finding as a matter of law that The Ohio Bell Telephone Company did not discriminate against Jacinda Anderson based on her disability."[1]

**Summary judgment standard of review**

{¶5} This court's review of a trial court's decision on summary judgment is de novo. *Bonacorsi v. Wheeling & Lake Erie Ry. Co.*, 95 Ohio St.3d 314, 2002-Ohio-2220, 767 N.E.2d 707, ¶ 24. Summary judgment is appropriate only when the moving party demonstrates that (1) no genuine issue of material fact exists, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds could come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence most strongly construed in its favor. Civ.R. 56(C); *State ex rel. Grady v. State Emp. Relations Bd.*, 78 Ohio St.3d 181, 183, 677 N.E.2d 343 (1997).

**Ohio Bell's summary judgment motion**

{¶6} In support of its motion for summary judgment, Ohio Bell submitted several affidavits with accompanying documentation and deposition transcripts, including the transcript from Anderson's deposition. It was Ohio Bell's position that Anderson sought disability leave based on "knowing misrepresentations." Specifically, the telephone

---

[1]Because the telephone company dismissed its fraud counterclaim against Anderson, the claim is not part of this appeal. Therefore, it will only be discussed as is necessary to explain the setting of the case.

company maintained that it granted her a five-week, short-term disability leave based on her representations that she was having surgery for carpal tunnel; the leave was for August 5, 2009 through September 14, 2009. According to the company, Anderson neither scheduled nor had the surgery.

{¶7} When the five-week period expired, Anderson sought additional time, which the company denied. Anderson appealed the denial. In support of her appeal, Anderson submitted a letter she and her father drafted, "purportedly bearing the letterhead and signature of a psychiatrist." However, Ohio Bell contended that the psychiatrist never treated Anderson during the relevant time frame, had not even met her at the time the letter was drafted, and did not write the letter. The "fraudulent" letter from the psychiatrist was the ground for Ohio Bell's fraud counterclaim against Anderson.

**Anderson's leave**

{¶8} The company's resource manager, Lashon Borom ("Borom"), averred that claims for short-term disability are processed by a third-party administrator, Sedgwick Claims Management Services, which operates as the AT&T Integrated Disability Services Center ("IDSC"). After being notified of a claim for short-term disability,[2] the IDSC makes a determination, based on the information provided by the employee's health care provider, on whether the medical condition qualifies for benefits. After it makes its determination, the IDSC then notifies the employee in writing as to whether his or her

---

[2]Under the company's benefits plan, an employee whose absence for his or her own illness for greater than seven days is eligible for short-term disability benefits.

claim had been approved or denied, and the reason for the determination.

{¶9} Borom averred that Anderson had "three chargeable absences in 2009: July 5 - July 11, July 19 - July 23, and July 30 - August 3." After the third absence, the company was eligible under its disciplinary policy to terminate Anderson, but it "decided to exercise leniency and * * * give her a final written warning plus 3-day suspension in lieu of termination."

{¶10} On August 13, 2009, Borom opened a short-term disability claim for Anderson because she had been off work for her own illness for eight consecutive days. On September 15, 2009, the IDSC determined that Anderson was no longer unable to work and, therefore, that she was not entitled to benefits. In a letter from Borom to Anderson dated September 16, 2009, Borom advised Anderson that her claim for short-term disability benefits had been denied and that she had "exhausted [her] FMLA entitlement for the current 12-month period." The letter directed Anderson to report to work on September 23, 2009, and that if she did not, the company would "have no choice but to assume you are abandoning your job" and it would remove her from the payroll because of her "voluntary resignation."

{¶11} The letter further advised that if Anderson required a reasonable accommodation, she should contact the IDSC, and if she needed help managing a situation in her personal or work life, she should contact the employee assistance program.

{¶12} Borom averred that Anderson did not contact her or otherwise respond to the letter, and did not report to work on September 23. Further, the IDSC did not contact

Borom to advise that Anderson had requested a reasonable accommodation. Borom sent another letter to Anderson, dated October 7, 2009, advising her to return to work by October 14; Anderson did not return. On October 14, Borom sent another letter to Anderson advising her to report to work by October 21; again, Anderson did not report. Another letter, dated October 26 was also sent; the letter stated that Anderson needed to report to work on November 2, 2009; she did not.

{¶13} As with the first letter, the October letters advised Anderson that failure to report to work would be deemed abandonment of her job and voluntary resignation; that she should contact the IDSC for a request for a reasonable accommodation; and that if she needed help managing a work or personal issue, she should contact the employee assistance program.

{¶14} Meanwhile in October 2009, Borom emailed an IDSC representative to get an update on Anderson's claim. Borom told the representative that Anderson "continues to say that her doctor is sending medical information because she is not able to come back to work." The representative responded that the IDSC had received updated information, but the "information did not support overturning the denial of this claim. To date, the claim remains denied from 9/15/09 to her return to work."

{¶15} After Anderson did not return to work, by letter dated November 5, 2009, Ohio Bell terminated her employment. Borom averred that before removing Anderson from the payroll, she contacted the IDSC to determine if Anderson had provided any additional information and learned that she had not. Borom further averred that neither

the IDSC nor Anderson had ever communicated any medical information about Anderson to her. According to Borom, at the time the termination decision was made, she had no knowledge as to what condition Anderson claimed was preventing her from returning to work.

{¶16} Ohio Bell also submitted an affidavit from Susan HagEstad ("HagEstad"), a manager for Sedgwick, the company that, as mentioned, was the third-party administrator of disability benefits for Ohio Bell. HagEstad averred that, although she had access to a claimant's records, because of privacy laws, medical information acquired by Sedgwick was not shared with Ohio Bell agents.

{¶17} According to HagEstad, Anderson called the IDSC on August 18, 2009, and reported that she was scheduled for hand surgery to treat carpal tunnel syndrome and arthritis on September 9, 2009. But as of September 14, Sedgwick had not received any medical documentation that a health condition prevented Anderson from working. Further, Sedgwick had only received a request from Anderson for time off work; it had not received a request for a job accommodation.

{¶18} On September 15, 2009, an IDSC claim representative contacted Anderson by phone and explained that her request for continued benefits beyond September 14 was denied because there were was no medical documentation substantiating the request. Anderson was further advised that she could submit medical documentation for additional review or file an appeal of the denial of benefits.

{¶19} HagEstad averred that on September 23, 2009, Anderson's supervisor

contacted the IDSC to inquire about whether additional medical records had been received from any of Anderson's medical providers. The supervisor was advised that additional medical information had been received and was pending review.

{¶20} On September 25, 2009, the IDSC reviewed Anderson's medical records from a September 8, 2009 appointment with Dr. Nina Njus, an orthopedic surgeon specializing in the hand. HagEstad averred that the review did not provide a basis to overturn the denial of benefits, so a claim representative contacted Dr. Njus's office to see if it had any additional records for Anderson. The office informed the representative that it would forward additional records from a September 22, 2009 appointment. The claims examiner contacted Anderson to explain that, as of that time, the claim for continued benefits was still denied, but that the IDSC would review additional records from Dr. Njus to determine if an approval of benefits was warranted.

{¶21} HagEstad averred that Borom contacted the IDSC in early October 2009 and was advised that additional documentation had been received, but that it did not support Anderson's claimed inability to work. Borom again contacted the IDSC later in October and on November 5, the day Anderson was terminated, and learned that no additional medical documentation on Anderson had been received.

{¶22} Anderson appealed the IDSC's decision denying benefits, and submitted various letters and medical records in support of her appeal. Only one of the documents — a letter from a psychiatrist, Dr. Kameswara Tatineni — stated that Anderson was unable to work for the period after September 14, 2009. The IDSC took Dr. Tatineni's

letter to state a medical opinion that Anderson had been incapacitated since July 2009, and based on that belief, hired an independent psychiatric medical advisor to review the letter and interview Dr. Tatineni.

{¶23} Ohio Bell also submitted an affidavit of Kacendra Offord ("Offord"), a Sedgwick case manager who was assigned to Anderson's case. Offord averred that Anderson reported to the IDSC that she was scheduled for hand surgery for carpal tunnel syndrome and arthritis on September 9, 2009, and based on that representation, Offord approved Anderson's claim for short-term disability benefits from early August 2009 through September 14, 2009.

{¶24} Offord averred that she made three requests from Anderson for the name of her surgeon on the following dates: August 19, August 31 and September 10, 2009. Anderson did not respond to the first two requests. Anderson responded to the third request on September 14, 2009 and provided Dr. Njus's name and number.

{¶25} Offord further averred that Anderson failed to inform the IDSC that she did not have surgery on September 9. Moreover, as of September 14, Sedgwick had not received any medical documentation from Anderson that supported her claimed inability to work, nor had it received a request for a job accommodation; the only request it had received from Anderson was for time off work.

**Anderson's medical treatment**

{¶26} The record demonstrates that on July 14, 2009, Anderson first consulted with a primary care physician, Dr. Kerwyn Flowers. She told the doctor that she had been

diagnosed with carpal tunnel syndrome approximately seven years prior, and she believed it had returned. Anderson told Dr. Flowers that she typed as part of her job responsibilities and that when she did so it caused her pain. The doctor testified that Anderson did not ask for a work restriction note from her, and that she did not advise Anderson that she was unable to work. Dr. Flowers recommended that Anderson treat with an anti-inflammatory and wear a splint.

{¶27} On August 7, 2009, Anderson had a follow-up appointment with Dr. Flowers. The doctor and Anderson did not discuss whether Anderson was working at that time. The doctor noted that Anderson had some tingling in her fingertips and testified that she "kind of" diagnosed her with carpal tunnel syndrome because Anderson "did test positive for [a sign of the syndrome] and did have some symptoms of carpal tunnel." Dr. Flowers recommended that Anderson continue to treat with an anti-inflammatory and a splint and, further, because she did not seem to be improving, that she schedule an appointment with Dr. Nina Njus, an orthopedic surgeon who specialized in the hand. She also referred her for physical therapy.

{¶28} Anderson first visited with Dr. Njus on September 8, 2009; her chief complaint was carpal tunnel syndrome on both sides. After her examination of Anderson, Dr. Njus wrote a letter to Dr. Flowers, and told her that she believed Anderson had a "low grade autoimmune reaction to strep." Dr. Njus ordered various tests and blood work, and told Anderson that she wanted to see her for a follow-up appointment once the blood work and tests and results were completed. The doctor did not place

Anderson on any restrictions, work or otherwise. She did not recommend surgery for Anderson; rather, her recommendation was "skillful neglect," which meant just leaving the areas Anderson complained about alone for the time being.

{¶29} Anderson saw Dr. Njus twice after her initial visit — on September 22, and October 7, 2009. The doctor was unable to find what was causing Anderson's pain and, therefore, she testified about her impressions after the October visit as follows: "I could not tell her if she would be able to return to her current employment because I [did] not have a definite diagnosis as to what was causing her upper extremity pain." The doctor advised Anderson to try physical therapy, and if that was not successful, she could then consider an epidural steroid or surgery.

{¶30} In late August 2009, Anderson sought a second opinion from Dr. George Balis, an orthopedic surgeon at the Cleveland Clinic. After his examination of Anderson, Dr. Balis concluded that she "probably had mild carpal tunnel syndrome," and there "may be some underlying carpal tunnel syndrome." He also noted that she had a mass on her left wrist, which he believed was possibly a ganglion cyst. Dr. Balis testified that sometimes the cysts can get large and be painful, but that generally there is no treatment for them other than aspirating them to drain the fluid or surgically removing them. The doctor switched Anderson's anti-inflammatory medicine, ordered lab tests, blood work and an MRI of her wrist.

{¶31} In late October 2009, Anderson had a follow-up appointment with Dr. Balis. Her test results were "not completely" within normal range, "but close." The doctor

testified that one test — which was not administered as a diagnostic test, but rather was administered as a general test — indicated that Anderson had inflammation in her body. Dr. Balis further testified that, based on the tests, Anderson did not have significant carpal tunnel syndrome, but he did not rule out that she may have had mild carpal tunnel syndrome. He recommended that she see a rheumatologist, who could explore whether she had fibromyalgia. He did not place Anderson on any restrictions, work or otherwise.

{¶32} As mentioned, Dr. Tatineni was a psychiatrist who saw Anderson. Anderson's first appointment with him was on January 18, 2010, after she had been terminated from Ohio Bell. Anderson went to the doctor for recommendations for coping with her severe pain and to seek a plan for rehabilitation. Dr. Tatineni provisionally diagnosed Anderson with severe major depression and post-traumatic stress disorder. Anderson saw Tatineni a second time and was admitted to the hospital in late January 2010; she sought to be voluntarily admitted on an emergency basis. She told the doctor that she was overwhelmed as a result of losing her job and was having suicidal thoughts.

{¶33} Dr. Tatineni admitted that Anderson wrote the letter (that was the basis of Ohio Bell's fraud counterclaim) and he signed off on it, but testified that the letter accurately reflected his medical opinion. The letter stated, in part, that Anderson had been "ill and incapacitated since July 2009." Dr. Tatineni admitted that Anderson had not been a patient of his in July 2009, but testified that the conclusion was based on the information Anderson described to him.

**Anderson's Opposition to Ohio Bell's Motion**

**{¶34}** In opposition to the telephone company's summary judgment motion, Anderson relied on her own deposition testimony and the deposition testimonies of the doctors with whom she treated.

**{¶35}** Anderson testified that she began experiencing chronic and severe pain in her hands and wrists, and after she got a carpal tunnel syndrome diagnosis from Dr. Flowers, Anderson applied for disability leave, and submitted her medical records to Sedgwick. Ohio Bell then approved her leave through September 14, 2009. According to Anderson, the pain greatly affected her life — she was unable to sleep, unable to care for her child, and was depressed.

**{¶36}** On September 8, 2009, Anderson saw Dr. Njus, as recommended by Dr. Flowers. Dr. Njus, however, did not believe that carpal tunnel syndrome explained the pain Anderson was experiencing and, therefore, did not recommend surgery. On September 11, 2009, Anderson signed a release relative to her medical records from her visit with Dr. Njus so that they could be provided to Ohio Bell. Before Ohio Bell received the records from Dr. Njus, Anderson received a letter from the company, dated September 16, 2009, stating that it would assume that she had abandoned her job if she did not return to work by September 23, 2009. According to Anderson, Ohio Bell issued the letter before speaking with Dr. Njus or reviewing her records.

**{¶37}** Dr. Njus's records were submitted to Ohio Bell on September 21, 2009, and they stated that Anderson was experiencing severe pain in her wrists and had difficulty sleeping because of the pain. Dr. Njus could not explain the cause of the pain, however.

The doctor wrote in an October 7, 2009 letter that she informed Anderson that she "could not tell her if she would be able to return to her current employment because [she did] not have a definitive diagnosis as to what [was] causing her upper extremity pain." The doctor continued that "[i]f therapy does not quiet her down, we will get a cervical MRI to see if she has a broad-based disc of something of that sort that is surgically amenable to treatment or consider possibly trying an epidural steroid."

**{¶38}** According to Anderson, she called Ohio Bell five times during the time spanning October 12 to October 22, 2009, to request an expedited review of her records. On October 14, 2009, Anderson wrote to her union to inform it that she was not abandoning her job. Borom, the telephone company's resource manager, received a copy of the letter.

**{¶39}** Further, on October 22, she wrote to Borom. In the letter, Anderson told Borom that she had a 15-year career with the telephone company, she was committed to her job, but because of her medical condition, she was unable to function at that time. She stated that she "needed a reasonable accommodation, which is a request for a time extension to recover." Anderson further stated in the letter that if granted an extension of time, she would continue treatment with a physical therapist to "further analyze and assist [her] with further accommodations to be able to perform [her] essential job functions." Anderson concluded the letter by saying that she was neither abandoning her job nor voluntarily resigning.

**Analysis**

**{¶40}** In this appeal, we consider whether the trial court erred by granting summary judgment in favor of Ohio Bell on Anderson's disability discrimination claims.

**{¶41}** R.C. 4112.02(A) prohibits discrimination based on disabilities as follows:

It shall be an unlawful discriminatory practice:

(A) For any employer, because of * * * disability * * * to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment.

**{¶42}** The Ohio Supreme Court has explained, "we have determined that federal case law interpreting Title VII of the Civil Rights Act of 1964, Section 2000e et seq., Title 42, U.S.Code, is generally applicable to cases involving alleged violations of R.C. Chapter 4112." *Little Forest Med. Ctr. v. Ohio Civ. Rights Comm.*, 61 Ohio St.3d 607, 609-610, 575 N.E.2d 1164 (1991); *see also Martin v. Barnesville Exempted Village School Dist. Bd. of Edn.*, 209 F.3d 931, 934, fn.2 (6th Cir.2000) ("Both federal and Ohio disability discrimination actions require the same analysis.").

**{¶43}** In pursuing an employment discrimination claim, a plaintiff must first establish a prima facie case of discrimination. *Greer-Burger v. Temesi*, 116 Ohio St.3d 324, 2007-Ohio-6442, 879 N.E.2d 174, ¶ 14, citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). If the plaintiff does, the burden then shifts to the employer to articulate some legitimate, nondiscriminatory reason for the adverse employment action. *Id.* Once the employer does, the burden again shifts to the plaintiff to show "that the proffered reason was not the true reason" for the adverse employment action. *Id.*, quoting *Texas Dept. of Community Affairs v. Burdine*, 450 U.S.

248, 256, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

{¶44} A prima facie case of discriminatory disability discharge requires a plaintiff to show (1) he or she is disabled, (2) he or she was otherwise qualified for the position, with or without reasonable accommodation, (3) he or she suffered an adverse action, (4) the employer knew or had reason to know of his or her disability, and (5) he or she was replaced or the job remained open. *Rosebrough v. Buckeye Valley High School*, 690 F.3d 427, 431 (6th Cir.2012), citing *Plant v. Morton Interntl. Inc.*, 212 F.3d 929, 936 (6th Cir.2000).

{¶45} Regarding Anderson's claim that Ohio Bell discriminated against her by failing to reasonably accommodate her alleged disability, under Ohio law

(1) An employer must make reasonable accommodation to the disability of an employee or applicant, unless the employer can demonstrate that such an accommodation would impose an undue hardship on the conduct of the employer's business.

(2) Accommodations may take the form, for example, of providing access to the job, job restructuring, acquisition or modification of equipment or devices or a combination of any of these. Job restructuring may consist, among other things, of realignment of duties, revision of job descriptions or modified and part-time work schedules.

Ohio Adm.Code 4112-5-08(E).

{¶46} Thus, both of Anderson's claims — discriminatory disability discharge and

failure to reasonably accommodate her alleged disability — first require that Anderson demonstrate she was disabled. The trial court found that she "did not produce evidence that created a factual dispute on the critical issue [of] whether at the time her employer was responding to her absences she had a disability within the meaning of Ohio law." We disagree.

{¶47} "Ohio disability discrimination law is similar to the Federal Americans with Disabilities Act ('ADA'), and therefore Ohio courts may seek guidance in the interpretation of the Ohio discrimination law from regulations and cases that interpret the ADA." *Ames v. Ohio Dept. of Rehab. & Corr.*, 23 N.E.3d 162, 2014-Ohio-4774, ¶ 26 (10th Dist.). A disability is defined as "a physical or mental impairment that substantially limits one or more major life activities of [an] individual, [and includes] being regarded as having such an impairment." 42 U.S.C. 12102(1)(A),(C). "Major life activities" include "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. 12102(2)(A). A plaintiff may prove disability discrimination with either direct or indirect evidence. *Markham v. Earle M. Jorgensen Co.*, 138 Ohio App.3d 484, 495, 741 N.E.2d 618 (8th Dist.2000).

{¶48} The trial court, citing *Rhoads v. Bd. of Edn.*, 103 Fed. Appx. 888, 893 (6th Cir.2000), held that a plaintiff must provide medical evidence to prove a disability and that Anderson failed to do so. Upon review, we find *Rhoads* distinguishable from this case.

{¶49} In *Rhoads*, the plaintiff had been a bus driver for a school district, and as

required to by law, had submitted to a random drug test; she failed the test.   After learning that she was going to be terminated, she resigned from her position.    Thereafter, she attempted numerous times to get her job back, to no avail.    She filed an action against the board of education claiming, among other things, that it had discriminated against her because of a disability, that is, substance abuse.   The district court granted summary judgment in favor of the board and the plaintiff appealed.

**{¶50}** In addressing whether the plaintiff was disabled, the Sixth Circuit acknowledged that disability discrimination can be proved with either direct or indirect evidence.   *Id.* at 891.   Thus, "[a]scertaining whether a plaintiff is disabled requires an individualized inquiry into her particular condition and its affect on her ability to perform a major life activity."   *Id.* at 892.    "The determination of whether an individual has a disability is not necessarily based on the name or diagnosis of the impairment the person has, but rather on the effect of that impairment on the life of the individual."    (Citation omitted.)   *Id.*

**{¶51}** The Sixth Circuit recognized that drug addiction is a "physical or mental impairment," but stated that "[a] plaintiff cannot prove that her drug use amounts to a disabling addiction merely by providing self-serving, conclusory statements that her drug use substantially limits her ability to perform a major life activity."   *Id.* at 893, citing *Cervella v. Lake Cty. Bd. of Commrs.*, 11th Dist. Lake No. 95-L-094, 1996 Ohio App. LEXIS 2449, 3 (June 14, 1996).   "Rather, 'at a minium, medical evidence must be offered to substantiate the claimed [disability].'" *Rhoads* at *id.*, quoting *Cervella* at *id.*

**{¶52}** In *Rhoads*, the plaintiff "produced scant medical evidence that she suffered from a drug addiction." *Id.* Rather, she relied on her own assertions that she began using drugs at age 16, that she sometimes smoked marijuana all day long, and that she believed that she was a drug addict.

**{¶53}** The Sixth Circuit found that "even assuming [the plaintiff] could show that she once suffered from a drug addiction, she presents no evidence indicating to what extent the addiction affected her ability to perform a major life function." *Id.* She, therefore, "failed to bring forth evidence adequate to prove that she was actually disabled when the District refused to hire her or that she had a record of a disability at that time * * * [or] that shows the District regarded her drug use as a disability." *Id.*

**{¶54}** The court reasoned that

> [a]lthough the random drug test certainly put the District on notice that she used controlled substances, there is no indication that the District regarded [her] as a drug addict or that it was aware of the extent of her use of marijuana. Nor does any evidence suggest that the District believed her drug use substantially limited her ability to perform a major life activity.

*Id.*[3]

---

[3]Medical evidence is not the only way a plaintiff can prove a disability. Specifically, being disabled for purposes of a disability discrimination claim includes *being regarded* as having a disability. "An individual is regarded as having a disability if the individual: '(1) has a physical or mental impairment that does not substantially limit major life activities but is treated by a covered entity as constituting such limitation; (2) has a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward such impairment; or (3) has [no physical or mental impairment] but is treated by a covered entity as having a substantially limiting impairment.'" *Fitzmaurice v. Great Lakes Computer Corp.*, 155 Ohio App.3d 724, 2004-Ohio-235, 803 N.E.2d 854, ¶ 20 (8th Dist.), quoting *Bush v. Dictaphone Corp.*, 10th Dist. Franklin No. 00AP-1117, 2003-Ohio-883, ¶ 40-43.

{¶55} Here, in contrast to the plaintiff in *Rhoads*, Anderson did present medical evidence; we find the medical evidence in the record created a genuine issue of material fact as to whether she was disabled. It is inconsequential that she never received a definitive diagnosis. As mentioned, "[t]he determination of whether an individual has a disability is not necessarily based on the name or diagnosis of the impairment the person has, but rather on the effect of that impairment on the life of the individual." *Id.* at 892.

{¶56} The record establishes that at the time of her leave from Ohio Bell, Anderson was experiencing severe pain in her hands and wrists. She treated with several doctors who were unable to definitively find the cause of her pain. But Anderson testified that the pain left her depressed, unable to care for her child, unable to sleep and, often times, bedridden. Dr. Tatineni's testimony aside (Anderson did not treat with him until after she was terminated), there is medical evidence in the record from the time she was granted medical leave from her job and was trying to find out what condition she had that Anderson had a history of depression. There was also medical testimony that depression can cause physical symptoms and pain. This evidence created a genuine issue of material fact as to whether Anderson was disabled.

{¶57} We note Ohio Bell's contention throughout this litigation that Anderson misrepresented to the company that she was scheduled for hand surgery. The record does support the company's contention of her misrepresentation — Anderson was not scheduled for surgery at the time she sought short-term disability leave or at any other relevant time. Even if there was a misrepresentation, that misrepresentation does not

diminish other evidence in the record, as detailed above, which creates a genuine issue of material fact as to whether Anderson was disabled.

**{¶58}** In light of the above, the trial court erred by granting summary judgment in favor of Ohio Bell on Anderson's disability discrimination claims.

**{¶59}** Judgment reversed; case remanded for further proceedings.

It is ordered that appellant recover of appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

_____
LARRY A. JONES, SR., JUDGE

SEAN C. GALLAGHER, P.J., and
PATRICIA ANN BLACKMON, J., CONCUR