18-2523-cv
*Saunders Ventures, Inc. v. Salem*

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

# SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007 IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 12th day of December, two thousand nineteen.

PRESENT:
        DENNIS JACOBS,
        SUSAN L. CARNEY,
        MICHAEL H. PARK,
             *Circuit Judges.*

_____

SAUNDERS VENTURES, INC., DBA SAUNDERS & ASSOCIATES,

        *Plaintiff-Counter-Defendant-Appellee,*

ANDREW SAUNDERS,

        *Plaintiff-Third-Party-Defendant-Appellee,*

        v.

                          No. 18-2523

MEG SALEM, AKA MARGARET SALEM,

        *Defendant-Counter-Claimant-Third-Party-Plaintiff-Appellant,*

COMPASS HAMPTONS, LLC, URBAN COMPASS, INC., DBA COMPASS,

*Defendants-Third-Party-Plaintiffs,*

VANESSA BOGAN, JESSICA GRAINGER-ROZZI, JESSE SPOONER,

*Defendants-Third-Party-Defendants.*

_____

FOR PLAINTIFF-COUNTER-DEFENDANT-APPELLEE:

Claude G. Szyfer, Michele L. Phamer, Stroock & Stroock & Lavan LLP, New York, NY.

FOR DEFENDANTS-APPELLEES:

Richard J. Montes, Mauro Lilling Naparty LLP, Woodbury, NY.

Appeal from a judgment of the United States District Court for the Eastern District of New York (Azrack, *J.*).

**UPON DUE CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment entered on July 27, 2018, is **VACATED** and the cause is **REMANDED** for further proceedings.

Appellant Meg Salem ("Salem") appeals from a modified judgment of the United States District Court for the Eastern District of New York (Azrack, *J.*) denying, in part, Salem's motion for (1) judgment as a matter of law under Federal Rule of Civil Procedure 50(b), or (2) in the alternative, for a new trial under Federal Rule of Civil Procedure 59. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal, to which we refer only as necessary to explain our decision.

The following statement of facts is taken from the undisputed portions of the parties' filings. In 2010, Salem joined Saunders & Associates ("Saunders"), a real estate brokerage firm located in Bridgehampton, New York. Salem and Saunders entered into an Independent Contractor Relationship Agreement (the "Agreement") that set forth the terms of their relationship. These included that Saunders "shall be paid a commission." J.A. at 911.

Saunders maintained its real estate listings in a private database, "RealNet." RealNet contained all of Saunders's current and historical listings and other confidential information amassed by the company over the years. Andrew Saunders, the company's owner, testified at trial that RealNet "represent[ed] the efforts of all our agents collectively over time." J.A. at 197.

In November 2015, Salem informed Saunders that, effective immediately, she would be joining its competitor, Compass, which had recently opened in the Hamptons. At roughly the same time, two other agents who worked with Salem, Vanessa Bogan ("Bogan") and Jesse Spooner ("Spooner"), also left with Salem to join Compass. Unbeknownst to Saunders, in the period leading up to Salem's departure, Salem and Bogan emailed listings from RealNet to their personal computers, and Salem directed Bogan to delete the sent messages from her Saunders email account.

After joining Compass, Salem enlisted the help of a Saunders employee to obtain the RealNet login credentials of Anna Alexopoulos ("Alexopoulos"), a Saunders employee who was on vacation at the time. Salem used those credentials to access RealNet. Having accessed the database, Salem emailed herself hundreds of Saunders's listings. In doing so, Salem inadvertently sent an email to Alexopoulos, which then led to Saunders discovering that Salem had accessed RealNet without authorization.

Upon its discovery of Salem's unauthorized use of RealNet, Saunders engaged the services of K2 Intelligence, LLC ("K2"), a firm specializing in cybersecurity and cyber intrusions. Saunders directed K2 to conduct an investigation into Salem's unauthorized access to its RealNet database and to assess whether (and if so, to what extent) any damage was done to the system. Saunders paid K2 $13,299.60 for its investigative services.

In December 2015, Saunders filed a complaint seeking damages from Salem for breach of contract and violation of the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. §§ 1030(a)(2)(C) and (a)(4). Salem then asserted counterclaims against Saunders alleging, *inter alia*, breach of contract with regard to commissions that Saunders retained on transactions in which Salem had participated, but that were finalized after she left the firm.

3

The case was tried to a jury for five days before the late United States District Judge Leonard D. Wexler. On February 20, 2018, the jury returned a verdict in favor of Saunders on its CFAA and breach of contract claims and against Salem on her breach of contract counterclaim. The jury determined that Saunders was entitled to $13,299.60 in damages on its CFAA claims and $1.00 in nominal damages on its breach of contract claim.

Following the entry of judgment, Salem moved for judgment as a matter of law or, alternatively, for a new trial, pursuant to Federal Rules of Civil Procedure 50(b) and 59. In her motion, Salem argued that the jury erred in failing to find a breach of contract where "it was undisputed that Saunders owed Salem commissions and those commissions had nothing to do with the alleged acts of misconduct." Appellant's Br. at 12. Salem also argued that Saunders failed to prove a loss cognizable under the CFAA; and in the alternative, she sought a reduction in the damages award on the grounds that certain costs were not recoverable under the CFAA. On July 27, 2018, the District Court granted her motion in part, reducing by $1,890 the damages award to Saunders on its CFAA claims. It otherwise denied the motion. Salem now challenges these decisions.

We review *de novo* a district court's decision on a post-verdict motion for judgment as a matter of law under Federal Rule of Civil Procedure 50(b). S*ee Madeira v. Affordable Hous. Found., Inc.*, 469 F.3d 219, 226 (2d Cir. 2006). In doing so, we apply the "same standard as the district court itself was required to apply." *Diesel v. Town of Lewisboro*, 232 F.3d 92, 103 (2d Cir. 2000). We thus consider the evidence in the light most favorable to the non-moving party, giving that party the benefit of all reasonable inferences that the jury might have drawn in its favor. *See id.* A motion for judgment as a matter of law should be granted "[o]nly if there is such a complete absence of evidence supporting the verdict." *Id.* (alteration in original) (internal quotation marks omitted).

We review the denial of a Rule 59(b) motion for abuse of discretion. *Arnold v. Cty. of Nassau*, 252 F.3d 599, 602 (2d Cir. 2001). A district court abuses its discretion if its decision to deny the Rule 59(b) motion resulted from an erroneous view of the law or rested on clearly erroneous findings of fact, or, if its decision is arbitrary, unsupported by the facts, unfair, beyond the range of authority or otherwise manifests a clear error of judgment. *Id.*

4

## I.   Breach of Contract Claim

On appeal, Salem argues that no reasonable jury could have determined that Saunders did not breach its contract when it failed to pay her $407,000 in commissions from sales that Salem originally brought in, but that were finalized after she left the firm. She contends that, had the jury found that Saunders breached their contract, it should have reached the faithless-agent defense question on the verdict sheet and determined that the payments did not arise in connection with the alleged acts of disloyalty. Therefore, Salem maintains she was entitled to her commissions.

"[A] party is not entitled to challenge on appeal the sufficiency of the evidence to support the jury's verdict on a given issue unless it has timely moved in the district court for judgment as a matter of law on that issue." *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 164 (2d Cir. 1998). As to those issues for which "proper Rule 50 motions were not made, JMOL may not properly be granted by the district court, or upheld on appeal, or ordered by the appellate court unless that action is required in order to prevent manifest injustice." *Lore v. City of Syracuse*, 670 F.3d 127, 153 (2d Cir. 2012); *see also ING Glob. v. United Parcel Serv. Oasis Supply Corp.*, 757 F.3d 92, 97 (2d Cir. 2014) ("The law is pellucid that a party's failure to move under Rule 50(a) has consequences. If that party later moves under Rule 50(b), the standard for granting judgment as a matter of law is elevated, and the motion may not properly be granted by the district court, or upheld on appeal, except to prevent manifest injustice.").

Salem did not move for a directed verdict on her breach of contract claim before the jury rendered its verdict. Her failure to preserve the sufficiency issue for appellate review can be overlooked only to prevent "manifest injustice," which exists where a jury's verdict is wholly without legal support. *See Rothstein v. Carriere*, 373 F.3d 275, 291 (2d Cir. 2004). Here, the jury's verdict as to Salem's breach of contract claim is well-supported by the record. *See ING Glob.*, 757 F.3d at 97. At trial, Salem herself testified that commissions are not payable to a brokerage unless and until a deal closes, and confirmed that she was no longer with Saunders when the sales at issue closed. Moreover, the Agreement provides that it may be terminated at any time. It does not provide that Saunders's obligation to pay commissions survives the Agreement's termination as to transactions that close post-termination, unlike

the provision regarding intellectual property rights concerning real-estate listings, which continue "[d]uring and after the term of this independent contractor agreement." J.A. at 911 ¶ 13. For these reasons, we conclude that there is no manifest injustice in letting the jury award stand.

## II.     CFAA

Salem argues that the costs Saunders incurred in investigating the nature and extent of the security breach of RealNet are not recoverable as a "loss" under the CFAA. 18 U.S.C § 1030(e)(11). Although Salem concedes that the cost of an investigation aimed at assessing damage to a computer system is typically recoverable under the statute, she urges that the K2 investigation does not qualify.

The record establishes that Saunders sufficiently proved "loss" to support the jury's verdict on its CFAA claims. The CFAA permits recovery of "any reasonable cost" incurred by a victim. 18 U.S.C. § 1030(e)(11). These expressly include the costs of "conducting a damage assessment." *Id.* The lead investigator at K2, Vincent D'Agostino ("D'Agostino"), explained at trial the reason for the damage assessment: "There was a concern about a potential unauthorized access into an account on November 17th that the company [Saunders] wanted investigated." J.A. at 58. The District Court correctly concluded that D'Agostino's testimony provided ample ground for the jury to have concluded that the purposes of the K2 investigation were to identify evidence of a breach, to assess any damage it may have caused, and to determine whether any remedial measures were needed. This was a sufficient basis to conclude that the cost of that investigation constitutes a compensable "loss" under the CFAA because Saunders failed to prove that certain cost entries were related to the investigation, and when the District Court reduced the award by $1890, it failed to deduct the 5% administrative charge and 8.875% sales tax associated with that amount. 18 U.S.C. § 1030(e)(11).

Salem also argues that the District Court should have further reduced the amount the jury awarded to Saunders under the CFAA. Salem fails, however, to demonstrate "such a complete absence of evidence" supporting the cost entries as would warrant deducting them

6

from the award amount. *Kinneary v. City of New York*, 601 F.3d 151, 155 (2d Cir. 2010) (internal quotation marks omitted). Salem's contention that, because counsel was present for the phone calls, certain cost entries for calls pertained to litigation charges, as opposed to damage assessments, is without merit. In particular, we reject Salem's contention that, because counsel was present on phone calls between the investigators and the client, cost entries for the calls pertained to the litigation charges rather than to damage assessments. The award, however, should be reduced by $262.23, the amount of the administrative charge and sales tax attributable to the $1,890 that was deducted from the original award. We conclude that the evidence was sufficient for a reasonable jury to find that the remaining costs were recoverable under the CFAA.

\* \* \*

We have considered Salem's remaining arguments and conclude that they are without merit. Accordingly, we **VACATE** the judgment and the cause is **REMANDED** for further proceedings consistent with this order.

FOR THE COURT:

Catherine O'Hagan Wolfe, Clerk of Court